### ST. LOUIS UNION TRUST CO. v. FINNEGAN.

### No. 6784.

United States District Court
E. D. Missouri, E. D.

Oct. 8, 1951.

Rhodes E. Cave and William C. Connett, IV (of Bryan, Cave, McPheeters & McRoberts), St. Louis, Mo., for plaintiff.

Homer R. Miller, Tax Unit of the U. S. Atty. Gen's. Office, Washington, D. C., Drake Watson, U. S. Atty., and William O'Donnell, Asst. U. S. Atty., St. Louis, Mo., for defendant.

HARPER, District Judge.

The plaintiff seeks to recover $162,515.13 income and declared value excess profit taxes for the period ending April 30, 1944, plus interest from April 15, 1947, paid by plaintiff as Executor of the Estate of Herman J. Sternberg, deceased, and as transferee of Central State Collieries, Inc. The first question presented is whether the sale was made by the corporation or by the executor. If, as the Government contends, the sale was in fact made by the corporation, plaintiff is not entitled to recover.

If, on the other hand, the sale was in fact made by the executor, the gain is not taxable to the corporation, and the plaintiff is entitled to recover.

■ While there are many cases supporting these conclusions, the leading cases are: Commissioner of Internal Revenue v. Court Holding Company, 324 U.S. 331, 65 S.Ct. 707, 89 L.Ed. 981, and United States v. Cumberland Public Service Company, 338 U.S. 451, 70 S.Ct. 280, 94 L.Ed. 251. These cases hold that a corporation may liquidate or dissolve without subjecting itself to the corporate gains tax, even though a primary motive is to avoid the burden of corporate taxation. But if the sale was a sale by the corporation rather than by the stockholders, the corporation is subject to tax on the gain from the sale. The question to be decided is one of fact.

■ The plaintiff transferred the assets of the corporation after the dissolution of the corporation, so it is necessary in this case to determine whether the sale was made by the corporation before its dissolution and the subsequent transfer of the assets was a result of such sale or not. The true test for determining if the corporation was taxable as a result of the sale depends upon the negotiations leading to the consummation of the sale and not the actual manner of handling the transfer itself.

Briefly, the facts of the case are as follows: Herman J. Sternberg died on January 10, 1944, leaving a large estate. His will named the plaintiff, St. Louis Union Trust Company, as executor. The Sternberg estate consisted almost entirely of all of the capital stock of the Sternberg Dredging Company, the Illinois River Docks, Inc., and the Central State Collieries, Inc., the latter which operated a strip mining operation in Illinois. When the plaintiff qualified as executor of the estate the stock in those corporations passed to the plaintiff. The plaintiff as executor determined that part of the estate would have to be sold in order to pay the estate taxes, and it became apparent that either the Sternberg Dredging Company or the Central State Collieries, Inc., would have to be sold for that purpose as the Illinois River Docks, Inc., was a small corporation allied with the Central State Collieries, Inc. It was decided that the Central State Collieries, Inc., and the Illinois River Docks, Inc., would be sold. After the death of Sternberg, Leo M. Geissal, an officer of the Central State Collieries, Inc., prior to Sternberg's death, was elected president and was in charge of the management of the said company. The company was a money making concern. Geissal was instructed by the Board of the corporation, which consisted of employees of the plaintiff and representatives of the heirs of the deceased, to try to sell the company. The sale was completed on or about the 17th of May, 1944, to William H. Cooke. There had been much negotiation between the parties prior to the sale. The first contact that Cooke had with respect to the purchase was in behalf of the Truax-Traer Coal Company, on February 17, 1944, when Geissal was contacted with respect to the possibility of purchasing the property. The purchasers were not interested in buying the stock of the company, but only the assets. The main reason for purchasing the assets was for tax purposes, one of the motivating reasons being for income tax purposes, since the company had been in existence for a number of years, and there would be a great difference to a new company in the depreciation schedules and items with respect to good will if the assets were purchased rather than the stock. After the initial contact of Geissal by Cooke in February, Geissal advised Cooke in March that the property was for sale. While the actual sale was consummated by Mr. Shepley for the plaintiff, most of the negotiations were actually handled by Geissal, the president of the corporation, whom Cooke characterized as an adroit horse trader, and who was trying to give the best possible picture on the assets of the property. The negotiations carried on by Cooke were for the Truax-Traer Coal Company, but when the coal company decided not to go through with the deal, Cooke purchased the property under the agreement he negotiated. Cooke dictated the manner in which the sale was consummated. The sale agreement required that the Central State Collieries, Inc., and the Illinois River Docks, Inc., be dissolved

and the assets purchased, but after the agreement was entered into, Cooke decided to buy the stock of the Illinois River Docks, Inc., and to forego the dissolution, which was the way the sale was handled.

There are a number of factors that lead to the conclusion that the sale was negotiated by the corporation. Geissal, the president of the corporation, who had no connection with the plaintiff, and whose salary and expenses were paid by the corporation, had more to do with the sale than any one else. The property was appraised during the negotiation for sale at the expense of the corporation, and on April 24, 1944, at a meeting of the stockholders, Leo M. Geissal, the president of the corporation, stated that two offers remained for the purchase of the St. David, Illinois, and Cuba, Illinois, Plants (the Central State Collieries, Inc.), the best offer being in the amount of $937,000. After considerable discussion a motion was made and passed as follows: "The officers of the company be instructed to secure offers for the purchase of the assets of the company and to report back to the stockholders."

At this stockholders' meeting it was not Shepley representing the plaintiff who discussed the results of the efforts to sell the corporation plants, but Geissal, the president of the corporation. It was not the trustees as stockholders who were given instructions to secure offers, but the officers of the corporation. The $937,000 offer referred to at the meeting was made by Cooke. who ultimately purchased the property, although in the final negotiations there was a change in the price from $937,000 to $967,000. After this stockholders' meeting, steps were immediately taken to dissolve the corporation preparatory to selling its assets, and it was the offer of Cooke reported by Geissal, the president, that was accepted. The position of Shepley makes the question of who made the sale difficult, for he represented the plaintiff as executor of the Sternberg Estate and was also an officer of the Central State Collieries, Inc. It is difficult to determine in which capacity he was acting in much of the negotiations leading to the sale. Shepley testified that he did not give much thought to whether the corpo-

ration assets should be sold by the corporation or by the plaintiff after it was dissolved, but that what was uppermost in their minds was that something had to be sold to pay estate taxes, and the plaintiff needed probate court orders to do so as protection because of the dispute among the heirs. In a prior trial in the state court with respect to the estate, Shepley testified that the question of transferring the assets of the corporation to the executor for sale "came up as we approached the time when it looked as though a sale would be made." While the actual transfer was made by the plaintiff after the corporation was liquidated, the facts in this case indicate that the sale was negotiated before the corporation was liquidated by the officers of the corporation acting as officers of the corporation, and it was too late thereafter to defeat the income tax which would be payable by the corporation as a result of the sale by handling the actual sale as it was handled in this instance. The plaintiff is not entitled to recover the income and declared excess profit taxes paid by the corporation as a result of the sale.

Attorneys for defendant will prepare the findings of fact, conclusions of law and judgment to be entered by the court.