**ST. LOUIS UNION TRUST CO. v. FIN-NEGAN, Collector of Internal Revenue.**

No. 14523.

United States Court of Appeals
Eighth Circuit.

July 3, 1952.

R. H. McRoberts and William C. Connett, IV, St. Louis, Mo. (Bryan, Cave, McPheeters & McRoberts, St. Louis, Mo., were with them on the brief), for appellant.

Melva M. Graney, Sp. Asst. to the Atty. Gen. (Ellis N. Slack, Acting Asst. Atty. Gen., Homer R. Miller, Sp. Asst. to the Atty. Gen., George L. Robertson, U. S. Atty., and William V. O'Donnell, Asst. U. S. Atty., St. Louis, were on the brief), for appellee.

Before GARDNER, Chief Judge, and THOMAS and JOHNSEN, Circuit Judges.

THOMAS, Circuit Judge.

This is an appeal by the plaintiff from a judgment for the defendant in an action brought by the St. Louis Union Trust Company as executor of the estate of Herman J. Sternberg, deceased, against James P. Finnegan as collector of internal rev-

enue for the United States, to recover $223,805.34, taxes and interest paid under protest based upon gain from the sale of the assets of Central States Collieries, Inc., which had been distributed as a dividend in liquidation to the plaintiff as its sole stockholder and subsequently sold.

In his answer to the complaint the defendant denied the right of plaintiff to recover and pleaded two affirmative defenses of recoupment and estoppel. At the trial counsel for the parties agreed that if plaintiff were entitled to recover, the correct amount of the judgment would be $162,515.13; and that if the defendant were entitled to recover on any of his affirmative defenses for recoupment the correct amount of such recovery should be either $77,342.96 or $64,720.03. The court having found for the defendant upon the complaint did not consider or pass upon the defendant's claim for recoupment.

The Central States Collieries was an Illinois corporation. All of its shares were owned by Herman J. Sternberg, who died January 10, 1944, and the title to such shares passed to the executor of his estate. The corporation voted to liquidate on May 1, 1944, and all of its assets passed to the plaintiff and by it were sold on May 17, 1944. The Commissioner of Internal Revenue assessed taxes for the gain on the sale to the plaintiff as transferee on the theory that the sale was in fact made by the corporation. The plaintiff paid the taxes with accrued interest on April 14, 1947, and thereafter filed with the Collector a claim for refund which was denied, and this action was then commenced.

The validity of the assessment by the Collector depends upon whether the sale of the assets was made by the corporation or by the executor.

The law is that "A corporation selling its physical properties is taxed on capital gains resulting from the sale [26 U.S.C. § 22(a); Treas. Reg. 103, § 19.22(a)–19]. There is no corporate tax, however, on distribution of assets in kind to shareholders as part of a genuine liquidation [Treas. Reg. 103, § 19.22(a)–21]." United States v. Cumberland Public Service Co., 338 U.S. 451, 452, 70 S.Ct. 280, 94 L.Ed. 251.

The trial court determined as a matter of fact and as a conclusion of law that "In substance, the sale was made by the corporation, and the plaintiff, as executor, was merely a conduit for carrying out the sale. For tax purposes, the gain attributable to the sale was that of the corporation and was properly included in the corporation's taxable income for the period involved by the Commissioner of Internal Revenue."

The case was tried to the court without a jury. The opinion of the court is reported in D.C., 100 F.Supp. 1020. The question for consideration here is whether the court's findings are clearly erroneous. Rule 52(a), Rules of Civil Procedure, 28 U.S.C.A.

The plaintiff contends that the court erred in finding and holding that the sale of the assets was made by the corporation and not by the executor as the sole stockholder. The determination of this contention requires a somewhat detailed review of the evidence.

Herman J. Sternberg was a citizen of Missouri. He left no children. He devised his estate, valued at more than $1,000,000, to his brothers and sisters and their heirs, and named the plaintiff as executor. He had been married about six months prior to his death. His will was executed several years prior to his marriage and was not changed thereafter. The widow, unprovided for in the will, succeeded, under the law of Missouri, to the ownership of one-half of the property of the estate. After the executor had qualified as such in the probate court of Missouri, its officers soon discovered that cooperation with the heirs would be difficult, and for that reason determined to obtain court orders approving its acts in all matters connected with the administration of the estate. The nature of these difficulties is disclosed in litigation carried through the courts. See Sternberg v. St. Louis Union Trust Co., 394 Ill. 452, 68 N.E.2d 892, 169 A.L.R. 545; In re Sternberg's Estate, Mo.Sup., 204 S.W.2d 761; Sternberg v. St. Louis Union Trust Co., 8 Cir., 163 F.2d 714.

In the previous litigation carried on in the Missouri and federal courts concerning estate matters while the question here

involved was not before those courts, yet the sale of the Collieries property appears to have been considered as made by the executor and not by the corporation itself.

The executor first suggested the sale. The executor found that the Federal estate tax and the Missouri inheritance tax together would probably exceed $800,000 and that the liquid assets of the estate were only nominal in relation to the amount involved. Mr. Shepley, representing the executor, realized also that in determining what property should be sold the approval of the heirs must be had in advance for without their consent litigation would be probable.

To secure the consent and cooperation of the widow and heirs, if possible, in the sale of the Collieries, the executor as sole stockholder selected a board of directors for the corporation consisting of the widow, some of the heirs and Mr. Geissal, who had been the manager of the corporation's business for Sternberg, and Mr. Shepley and other employees of the executor. A majority of the board were officers or employees of the executor. Because of his knowledge of the affairs of the corporation and the value of its assets Geissal was elected president.

Since it is admitted that plaintiff as the only stockholder effected the final sale and transfer of the assets the question for decision is whether all the facts show that the liquidation and sale were genuine and not a sham. If found to be genuine the sale "cannot be attributed to the corporation for tax purposes." United States v. Cumberland Public Service Co., 338 U.S. 451, 455, 70 S.Ct. 280, 282, 94 L.Ed. 251.

But three witnesses were called to testify at the trial, two for the plaintiff and one for the defendant; and we find no material contradiction or inconsistencies in their testimony. William H. Cooke and John R. Shepley were called by the plaintiff and Leo M. Geissal by the defendant. Cooke was the purchaser of the assets; Shepley was vice-president of the Trust Company, the executor; and Geissal was president of Central States Collieries, Inc.

Mr. Shepley, vice-president of the Trust Company, testified that one of the principal functions of his office was to handle the business end of properties that come under the Trust Company's care in various fiduciary capacities; that he was in charge of the Sternberg estate; and that the decision to sell the Collieries to procure funds to pay the estate and inheritance taxes was reached by him before the winter of 1944 was over. He testified further that it was realized in effecting the sale of Collieries Company he would necessarily look to Mr. Geissal for assistance because of his familiarity with the assets and their values; but that Geissal was never authorized to conclude any deal.

On this point Mr. Geissal testified that his only authority was to try to find a purchaser and to refer that purchaser to Mr. Shepley; that after the death of Mr. Sternberg he "looked upon Mr. Shepley as his boss, so to speak * * *."

Mr. William H. Cooke of Chicago, Illinois, testified that he engaged in the negotiations leading up to the purchase from the St. Louis Union Trust Company of certain of the assets of the Central States Collieries Company in Illinois by the Little Sister Coal Corporation of which he was the owner and operator. He first began the negotiations on behalf of the Truax-Traer Coal Company, but when that company decided not to complete the purchase he determined to conclude the purchase for his own corporation.

Cooke had known Mr. Sternberg in his lifetime and was acquainted with Mr. Geissal. When he learned of the death of Mr. Sternberg he telephoned to Mr. Geissal about February 17, 1944, and inquired as to what disposition would be made by the estate of the Central States Collieries property. Geissal told him that when the matter was determined he would let him know. Thereafter Geissal called him and he went to St. Louis the first of March and was there three days. Mr. Geissal introduced him to Mr. Shepley. He told Mr. Shepley that he was interested in the purchase of the assets of the Collieries Company but was not interested in "a stock purchase." Mr. Shepley directed him back to Mr. Geissal for the purpose of going over with him in detail the assets of the company.

Mr. Shepley also referred him to Mr. Crawford Johnson, an attorney for the executor Trust Company, who gave him information in regard to the legal questions involved, "particularly as to how probate proceedings were to be handled." At this stage of the proceedings he was told by Mr. Shepley that any offer made by him would be for the physical assets and not for the stock of the Collieries Company. He was also told that there were other bidders for the assets. He was in St. Louis on April 11, 1944, and "negotiated a purchase price with Mr. Shepley of the St. Louis Union Trust Company in the amount of $937,000", subject to a fifteen day option to the Truax Company to give its officers an opportunity to make an examination of the properties and to arrange for financing the purchase price. In his letter accepting the proposition Mr. Shepley outlined the steps which it would be necessary for the executor to take in the probate court to close the transaction.

He was asked "Q. Did you ever make an offer for the purchase of this property to any one other than Mr. Shepley? A. No." He said further that Mr. Geissal played an important part in the negotiations; "that he gave me all of the information at the request of Mr. Shepley"; and that Mr. Johnson, counsel for the executor, participated in many of the negotiations.

Thereafter the executor made application to the probate court for an order authorizing the sale of the assets of the Collieries Company at private sale; the corporation liquidated by surrendering to the executor all of its assets in exchange for its capital stock, and the transaction was consummated in May, 1944.

We reach the conclusion that the court erred in finding and holding that the sale of the assets of the Central States Collieries, Inc., was actually made by the corporation and not by the St. Louis Union Trust Company, the executor of the Sternberg estate. Mr. Geissal's share in the negotiations leading to the sale was at all times at the direction and under supervision of Mr. Shepley, vice-president of the Trust Company, executor. There was a "genuine liquidation" of the corporation and a sale of the assets negotiated directly by the executor as owner of the assets after the liquidation was completed. The entire transaction was conceived and planned by the officers of the Trust Company for the legitimate purpose of securing funds with which to pay the estate and inheritance taxes imposed upon the estate of Herman J. Sternberg deceased.

The appellee argues that the issue of whether the sale of the assets was negotiated by the corporation or by the executor is one of fact, and that the district court was the trier of the facts and that, upon review, this court will not retry the issue or substitute its judgment with respect to such issues for that of the trial court, citing Cleo Syrup Corporation v. Coca-Cola Co., 8 Cir., 139 F.2d 416, and other cases. The rule is a sound one when properly applied; but it is the duty of this court to reverse where the finding of fact made by the trial court is clearly erroneous, and a finding is clearly erroneous where it is not supported by the evidence, and is contrary to the evidence. The fact in dispute here is not an "inferential fact" to be deduced from disputed facts. The facts here are undisputed and the inference that the sale was made by the corporation is a *non sequitur;* it is not a conclusion or inference which can be deduced from the proven facts; it is contrary to the evidence and is, therefore, "clearly erroneous." Further, it has been held that where the trial court's factual finding deals merely with conclusions from undisputed facts it is deprived of Rule 52(a) finality. In re Kellett Aircraft Corp., 3 Cir., 186 F.2d 197, 200. And see United States v. United States Gypsum Co., 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746; United States v. Oregon State Medical Society, 343 U.S. 326, 339, 72 S.Ct. 690; Gindorff v. Prince, 2 Cir., 189 F.2d 897.

The judgment appealed from is reversed and the case is remanded to the trial court for further proceedings in conformity to this opinion and to adjudicate the affirmative defenses of recoupment and estoppel.