**VICTORY HOUSING NO. 2, Inc. v. COM-
MISSIONER OF INTERNAL
REVENUE.**

No. 4592.

United States Court of Appeals
Tenth Circuit.

June 12, 1953.

Carl T. Smith, Wichita, Kan. (George Siefkin, George B. Powers, Samuel E. Bartlett, John F. Eberhardt, Stuart R. Carter, Robert C. Foulston, Jr., and Malcolm Miller, Wichita, Kan., on the brief), for petitioner.

Harry Marselli, Washington, D. C. (H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, A. F. Prescott and William L. Norton, Jr., Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before PHILLIPS, Chief Judge, and HUXMAN and PICKETT, Circuit Judges.

HUXMAN, Circuit Judge.

The question in this case is whether the gain realized from the sale of 42 housing units by petitioner during a six months period during the fiscal year ending in 1946 was taxable as a capital gain under section 117 (a, j) of the Internal Revenue Code, 26 U. S.C.A., or as ordinary income under section 22(a). The Tax Court held that these units were held primarily for sale to customers in the ordinary course of petitioner's business and the gain realized from their sale was ordinary income and taxable as such. This appeal challenges the correctness of that conclusion.

Charles W. Pence and Lige E. Watson were partners in the real estate business from 1923 to 1945 in Wichita, Kansas, and as such were engaged in constructing and selling houses. Herbert W. Kessler and Frank M. Kessler were during 1946, and for many years prior thereto, engaged in the lumber business in Wichita, Kansas. In the early part of 1942, Charles W. Pence

met with representatives of the Federal Housing Administration and discussed the possibility of building rental housing facilities for rental to defense workers under the National Housing Act. There was a great need for such facilities for defense workers. Subsequently Pence discussed the matter with the Kesslers and they decided to form a corporation for the purpose of constructing and renting such units. As a result, Charles W. Pence, Lige E. Watson Frank M. Kessler and Herbert W. Kessler incorporated petitioner. They were the principal stockholders and officers of the corporation. Among its other activities petitioner constructed 84 single rental units. Since the Tax Court found that these units were constructed primarily for rental purposes and not for sale, it is not necessary to set out in detail the conditions and restrictions which were imposed upon petitioner with respect to the rental of these units, in order to obtain critical material to make possible their construction. While the Tax Court held that these units were constructed for rental purposes and were so held and used by petitioner, it further found that during the fiscal year 1946 petitioner held these 42 units primarily for sale to customers in the ordinary course of its business. It was upon this finding that it predicated its conclusion that the gain realized from the sales was ordinary income and taxable as such.

The principles of law with respect to what constitutes capital gain and ordinary income are simple and not in dispute. The decision turns entirely upon whether the court's finding that during the time involved these 42 units were held primarily for sale to the petitioner's customers *in the ordinary course of its business* finds support in the record. What was petitioner's business? Admittedly it was a housing rental business. While its charter was broad enough to enable it to engage in a general real estate business, it is admitted that it was formed for the purpose of building and renting rental housing units. It must thus be conceded that these 42 units during the time they were being rented constituted capital assets used in petitioner's rental business. It must also be conceded that from its incorporation to the beginning of the time in question petitioner was solely engaged in the rental of these capital assets. In order then to uphold the finding and judgment of the Tax Court, there must be evidence supporting a finding that petitioner changed the nature of its business or enlarged its business so as to include therein not only its rental business but a general real estate business and that it placed these capital assets into its real estate business and thereafter disposed of them in the usual course of such business.

No rigid rule can be formulated by application of which it can be determined in every case with finality whether property sold by a taxpayer was held primarily for sale to customers in the ordinary course of his trade or business, or whether it was sold as a capital asset. As pointed out by us in Mauldin v. Commissioner, 10 Cir., 195 F.2d 714, there are certain factors or indices helpful in making the determination such as the purposes for which the property was required, the activities of the taxpayer and his agents with respect thereto, the development and improvement of the property for purposes of readying it for sale, an advertising campaign to promote the sale of the property, frequency and continuity of sale, as well as other factors. But, as pointed out, none of them are determinative. Neither is the presence nor the absence of any of these factors conclusive. In the end, each case must stand on its own peculiar facts and circumstances. Because of this and the well recognized principles of law, we deem it unnecessary to cite or digest a large number of authorities from this or other courts.

We begin in this case with the admitted fact that petitioner at the time of the acquisition of these units was not engaged in the real estate business in the sense that it was acquiring and developing these units for resale to its customers. It was engaged in the rental business. That was the purpose for which it was formed. These units were acquired and developed

for the purpose of carrying on its rental business and constituted capital assets in that business. If thereafter petitioner decided to quit this business and liquidate its capital assets, or while continuing in its business sell some of the capital assets not considered essential to the continuance thereof, it could sell them in any way most advantageous to it so long as it did not enter the real estate business, dedicate this property to the use of that business for the purpose of liquidating and selling it, in the course of carrying on its new real estate business.

In the Mauldin case, supra, we held that while the real estate there involved originally was a capital asset, Mauldin thereafter engaged in the real estate business and sold this capital asset in the usual and ordinary course of such business to its customers. We think the same is not true in this case. Here taxpayer continued in the rental business. It did not take on a new business. It neither bought nor developed real estate for sale. It held no real estate license. It did not engage in an advertising campaign to sell the real estate. It did not do any of the things which we ordinarily find in such a business. While Mr. Kessler testified that he advocated a change in policy with respect to these houses, which was adopted by the corporation, it was not a change in policy with respect to the nature of taxpayer's business in which these houses were to be used. The change in policy was the desire of the corporation to make such of these houses as were desired available to returning veterans, who were sorely in need of housing accommodations. The corporation, therefore, determined that it would sell these houses to veterans who came in, inquired about them, and desired to buy and thus as veterans and later some non-veterans came to inquire about these rental facilities and expressed a desire to buy, they were sold, but the company carried on no sales campaign. It did not advertise the houses for sale either through publication or by signs erected on the premises. It did not list them with real estate men. It did none of the things which we ordinarily associate and find with one actively engaged in the real estate business. The fact that 42 units were sold over a period of six months does not establish a real estate business or the sale of property in the ordinary course of such a business. If a farmer has twenty separate farms which he uses in his farming business and, desiring to quit farming and to dispose of his holdings, sells them in the course of three or four weeks, or three or four months, the fact that there are a consirable number of sales in a relatively short time standing alone is not sufficient to put him in the business of selling farms in the ordinary course of such a business. The same must be said with respect to these 42 units.

In many respects the facts of this case are similar to those in Farley v. Commissioner, 7 T.C. 198, in which the court held that the liquidation of capital assets somewhat in the manner in which these assets were liquidated did not constitute sales to customers in the ordinary course of the taxpayer's business. We think there is a complete absence of any facts supporting the conclusion that petitioner abandoned its rental business and engaged in the real estate business or engaged in the additional activities of a real estate business for the purpose of selling these capital assets in the ordinary course of such new business to its customers. In the absence of such a showing, the sales were sales of capital assets and the tax on the gain should have been computed as contended for by petitioner.

The decision is reversed and the cause is remanded to proceed in conformity with the views expressed herein.