PARKLAWN CORP. et al.

v.

GLENN, Collector of Internal Revenue.

Civ. A. No. 2293.

United States District Court
W. D. Kentucky, at Louisville.

Jan. 28, 1954.

Lee Curd Miller, Bullitt, Dawson & Tarrant, Louisville, Ky., for plaintiffs.

J. Leonard Walker, U. S. Atty., Louisville, Ky., for defendant.

SHELBOURNE, Chief Judge.

This action was filed January 4, 1952, by the Park Lawn Corporation, hereinafter called Park Lawn, and Olive F. Adams and Joshua B. Adams, distributees in liquidation, against Seldon R. Glenn, who was then Collector of Internal Revenue for the District of Kentucky.

It was alleged that Park Lawn was incorporated March 24, 1942, and liquidated finally February 11, 1946; that upon its dissolution Olive F. Adams owned 487 shares of its capital stock and Joshua B. Adams, 163 shares; that after Park Lawn had filed its income tax return for the fiscal year ended August 31, 1945, a revenue agent proposed an overassessment of income tax in the sum of $147.76 and a deficiency of declared value excess profits tax in the amount of $1,057.64; that pursuant to that recommendation an assessment was made by the Collector upon which Park Lawn paid $909.88, for which it filed on May 12, 1950, its claim for refund in the sum of $1,057.64; that its claim for refund was disallowed; and that the assessment and collection of the tax was legally unauthorized because the assessment was based on the theory that Park Lawn held certain houses for the purpose of selling them, when in truth and in fact they were being held for rental purposes.

The answer of the Collector admitted the timely filing by Park Lawn of the income tax return as alleged in the complaint, the issuance of the assessment of income tax; admitted the filing of the claim for refund and its subsequent disallowance; but denied all the allegations of the complaint with respect to the assessment being unauthorized or erroneous.

Case was tried to the Court September 1, 1953. The Court makes the following findings of fact.

## Findings of Fact

1. Park Lawn Corporation is a corporation created under the laws of Kentucky.

2. For the fiscal year ending August 31, 1945, Park Lawn filed its income tax return and therein treated profits realized from the sale of certain houses and lots during the fiscal year 1945 as long-term capital gain. The Commissioner of Internal Revenue determined that to the extent of $15,802.23 Park Lawn's profits for 1945 were realized from the sale of property primarily held for sale to customers in the course of its business and that same was taxable as ordinary income. This determination was followed by the assessment on which Park Lawn paid $909.88. Thereafter, on May 24, 1950, Park Lawn filed its claim for refund for the amount paid, $909.88, plus the credit for overassessment, $147.76, which made $1,057.64 claimed as gain realized from the sale of capital assets. March 5, 1951, the Commissioner disallowed Park Lawn's claim and this suit was instituted January 8, 1952.

3. Park Lawn was created in 1942 and immediately took over from the partnership of Martin L. Adams & Sons 108 houses and lots contained in a subdivision to the City of Louisville and all of which houses had been built by the partnership of Martin L. Adams and his two sons, Joshua B. Adams and William F. Adams. The last three named individuals had organized the corporation and were the owners of all of the shares of its capital stock.

4. In the articles of incorporation the purpose for which the corporation was organized was stated broadly to be buying, selling, owning, leasing, renting and dealing in real estate, to own corporate notes, debentures and securities.

5. Immediately after the 108 houses and lots were conveyed to Park Lawn, it began to contract with various individuals for their sale and adopted a uniform contract, the parts of which material to this action are as follows:

"First party is the owner of the property herein described and first party agrees to sell said property to second party and second party agrees to purchase said property from first party for $4800.00 to be paid only in the manner herein specified.

"1. Second party shall be given immediate possession of said property and accepts said property in good condition, and agrees to return it to first party in good condition at the expiration of this contract if second party has not complied with the terms of this contract.

"2. Second party agrees to pay to first party monthly in advance the sum of $56.93 for a period of 24 months.

"3. If second party makes the monthly payments herein provided for as the same mature, then at the expiration of 24 months first party will convey said property to second party upon second party assuming the balance then due on the F. H. A. loan, subject to first party being fully released from the mortgage by second party's approval by the F. H. A. and the mortgages. It is further agreed between both parties that the party of the second part may have the privilege of refinancing said property through any other Building and Loan Association upon full settlement of the balance of the payment of this contract. In the event the party of the second part is unable to secure a release on the mortgage for the party of the first part, first party shall retain title to the property and party of the first part shall permit party of the second part to make all mortgage payments including taxes and insurance and all other payments as may be required by the mortgagee until full settlement payment of the first party's mortgage.

Upon second party's making full payment of the mortgage, party of the first part shall immediately convey title to said property to second party free and clear of all incumbrances. It is further agreed that second party is to keep said property in good condition at all times making all repairs as may be necessary.

"4. Should second party fail or refuse to make any monthly payment when due, and such default continues for a period of 5 days, or should second party materially damage the property or by its maintenance he shall create a nuisance, then, and in that event, second party agrees, upon first party's demand to surrender the property to first party and all the monthly payments herein provided for shall be retained by first party as reasonable rent for second party's occupancy of the property during the period represented by such rental payments, it being specifically agreed between the parties that all monthly payments are a reasonable rental for the property, and second party agrees that in the event such rental is not paid he has no rights under this contract, except the right to the occupancy of said property during that period of time that the payments are made. And it is further agreed between the parties that upon second party's default, first party shall not hold second party for any obligation under this contract in any way whatever, except for the payment of the monthly payments during such time as second party occupies the premises. It is agreed between the parties that 'occupancy of the premises' means such time as second party has possession or control thereof and shall terminate only upon second party's written notice to first party or second party's giving up actual possession to first party."

6. The profits on which the assessment was made arose by virtue of the sales made under this contract.

### Conclusions of Law

1. The Court has jurisdiction of the subject matter and the parties. Title 28 § 1346(a) (1), U.S.Code.

2. Title 26, § 117(a), U.S.Code. a section of the Internal Revenue Code, provides that real estate is a capital asset unless it is used in a taxpayer's trade or business or held primarily for sale to customers in the ordinary course of trade or business. The Commissioner determined that Park Lawn was holding the houses and lots involved here primarily for sale to customers in its ordinary course of business and this determination on the part of the Commissioners has a presumption of correctness.

3. The language of the contract of sale indicates to the Court that the primary object was a sale. Indeed, the only provision for rent on the part of the purchaser would be upon his default in the payment of the purchase price installments, on account of which default Park Lawn would terminate the agreement. In that event, the contract provided that the amount paid up to date of default would be retained by Park Lawn as fair and reasonable rent for the period of occupancy up to the date of default.

4. The terms of the contract indicate to the Court that Park Lawn contemplated sale and not rental, and the Court concludes that Park Lawn was holding the houses conveyed to it by the partnership of Martin L. Adams & Sons primarily for sale to customers in the ordinary course of business. Rolling Wood Corp. v. Commissioner, 9 Cir., 190 F.2d 263.

5. Victory Housing Number 2 v. Commissioner of Internal Revenue, 10 Cir., 205 F.2d 371, is distinguishable on the facts.

6. Had the contract between Park Lawn and its customers been a contract

of renting with an option to purchase, that fact would bolster the statement of the taxpayers that their intention was to rent. On the other hand, the contract of sale adopted in which the owner unequivocally agrees to sell and the purchaser unequivocally agrees to buy indicates to the Court that a sale of the house and lots was contemplated at the time Park Lawn acquired them and that they were acquired for the purpose of sale.

### Conclusion

Consequently, the Court concludes that the Commissioner's assessment was warranted by the facts and that the payment of the tax on the demand of the Commissioner was authorized by law. A judgment dismissing the complaint herein will be tendered by counsel for defendant on notice to counsel for plaintiffs.