The WESTERN AND SOUTHERN LIFE
INSURANCE COMPANY

v.

UNITED STATES.

No. 442–52.

United States Court of Claims.

July 16, 1958.

Lawrence H. Kyte, Cincinnati, Ohio, for plaintiff. Thomas L. Conlan, Lucien Wulsin, Jr., and Alan R. Vogeler, Cincinnati, Ohio, were on the brief.

John A. Rees, Washington, D. C., for defendant, with whom was Asst. Atty. Gen. Charles K. Rice. James P. Garland, Washington, D. C., was on the brief.

PER CURIAM.

This case was referred by the court, pursuant to Rule 45(a), 28 U.S.C.A., to Mastin G. White, a trial commissioner of the court, with directions to make findings of fact and recommendations for conclusions of law. The trial commissioner has done so in a report filed May 5, 1958. Although the defendant did within 15 days of the filing of this report file a notice of intention to except to the trial commissioner's findings and recommendation, the defendant by motion filed June 19, 1958, and allowed on July 1, 1958, withdrew this notice of intention to except, and moved for a judgment in accordance with the recommendation of the trial commissioner. On June 25, 1958, plaintiff filed a notice joining with defendant for a judgment based on the trial commissioner's recommendations. Since the court agrees with the recommendations and findings of the trial commissioner, as hereinafter set forth, it hereby adopts the same as the basis of its judgment in this case. Plaintiff is therefore entitled to recover, together with interest thereon as provided by law, and judgment is entered to that effect. The amount of recovery will be determined pursuant to Rule 38(c).

Opinion of the Commissioner.

The primary issue in this case is whether certain sales of real estate that were made in 1946 should be attributed for income tax purposes to the Waslic Corporation.

The plaintiff, the Western and Southern Life Insurance Company, is a corporation organized and existing under the laws of the State of Ohio, with its principal office and place of business lo-

cated in the city of Cincinnati. During 1946 and for many years prior thereto, the plaintiff was a stock life insurance company.

The Waslic Corporation (which will usually be referred to in this opinion as "Waslic") was organized on March 20, 1933 under the laws of the State of Delaware as a wholly owned subsidiary of the plaintiff. It was intended, at the time of Waslic's organization, that it would take over from the plaintiff, hold, and manage real estate in States where the plaintiff was not authorized to do business but in which the plaintiff had made loans on realty, had foreclosed the mortgages, and, as a result, was holding title to real estate. In addition, Waslic was to hold the title to real estate in situations where the plaintiff was not permitted to hold such title under the rules and regulations of the Insurance Department of the State of Ohio. Under those rules and regulations, Ohio life insurance companies were not permitted to hold real estate as admitted assets for the computation of reserves beyond a period of 5 years without specific permission from the Insurance Department of the State.

The directors and principal officers of Waslic and of the plaintiff were identical.

Following the establishment of Waslic, farm properties and commercial real estate were transferred by the plaintiff to Waslic and thereafter were operated by the latter. Each farm held and operated by Waslic was given a number preceded by the abbreviation "WF"; and each commercial property held and operated by Waslic was given a number preceded by the abbreviation "W". Such designations will be used in this opinion.

When favorable conditions were presented, the less desirable of the properties that had been transferred to Waslic were disposed of by Waslic. This program of disposition extended over a period of years. The standard procedure followed by Waslic in disposing of its real estate holdings was as follows: appropriate officers or other agents of Waslic were authorized and instructed to procure prospective purchasers for parcels of real estate; these officers or agents would secure from the prospective purchasers signed offers and submit the propositions to Waslic; and Waslic, in turn, submitted the proposals to the finance committee of the plaintiff for approval or disapproval. Waslic never executed a contract of sale for real estate without the prior approval of the plaintiff's finance committee.

■ For a number of years prior to 1946, the board of directors of the plaintiff had been considering a plan for the mutualization of the plaintiff. Mutualization involves the transfer of ownership of an insurance company from the stockholders to the policyholders. This change of ownership is brought about by the stockholders surrendering to the insurance company their stock for an agreed price. On the surrender of the stock, the company then belongs to the policyholders.

On January 8, 1946, the president of the plaintiff appointed a committee to prepare and submit a plan for the mutualization of the plaintiff.[1]

On March 25, 1946, after learning from the Ohio Superintendent of Insurance that in the event of mutualization the stockholders of the plaintiff would be required to take all the real estate (with the exception of the home office building) from the assets of the plaintiff, it was decided by the finance committee of the plaintiff that an intensive drive would be made for the sale, at not less than its appraised value, of all the real estate held by Waslic or by the plaintiff. This program was to be carried out irrespective of whether mutualization should become effective or not. Accordingly, officers and agents of Waslic were instructed to

---

[1]. The mutualization of the plaintiff was ultimately carried out in 1948, after delay occasioned by litigation that is of no particular importance from the standpoint of the present case.

endeavor to obtain offers for the purchase of real estate owned by Waslic.

At a meeting of the board of directors of the plaintiff on May 7, 1946, the president and secretary of the plaintiff were instructed to take all the steps necessary to dissolve Waslic. Subsequently, the board of directors of Waslic, at a meeting held on June 5, 1946, passed a resolution declaring that it was the best judgment of the directors that Waslic be dissolved. On the same date, the plaintiff, as the sole stockholder of Waslic, consented to the dissolution. A certificate of dissolution was filed with the Secretary of State of Delaware on June 15, 1946. However, as indicated below, Waslic continued to function *de facto* for certain purposes subsequent to June 15, 1946.

On June 20, 1946, the board of directors of Waslic adopted a resolution authorizing the transfer of Waslic's assets to the plaintiff. In accordance with this resolution, the officers of Waslic on June 20, 1946 executed general warranty deeds transferring to the plaintiff all the real estate owned by Waslic, with the exception of a piece of commercial real estate designated as W–53, which was transferred by Waslic to the plaintiff on June 28, 1946, and two other commercial properties designated as W–76 and W–78, which are not directly involved in this litigation. A total of 52 parcels of real estate were involved in the transfers from Waslic to the plaintiff on June 20 and 28, 1946.

The real estate mentioned in the preceding paragraph as having been transferred by Waslic to the plaintiff on June 20 and 28, 1946 was conveyed by the plaintiff to third parties during the period June 28–December 30, 1946 pursuant to contracts of sale. In most instances, the contracts of sale were negotiated by the plaintiff after the properties had been transferred by Waslic to the plaintiff. However, the negotiations for the contracts of sale relative to nine of the parcels were conducted by Waslic prior to the time when the particular proper-

ties were transferred by Waslic to the plaintiff, and seven of these purchase contracts were signed by Waslic as seller, while the other two purchase contracts were signed by the plaintiff as seller after the two parcels had been transferred to the plaintiff by Waslic.

The gains (or losses) resulting from the sales of all the 52 parcels form the subject matter of the present litigation. Gains aggregating $1,148,063.15 were realized from the sales of 47 parcels, while losses aggregating $6,721.55 were realized from the sales of 5 parcels. Hence, the aggregate net gain resulting from all the transactions amounted to $1,141,341.60.

On December 26, 1946, a Federal corporation income tax return for 1946 was filed for Waslic with the Collector of Internal Revenue at Cincinnati. This return indicated upon its face that it was a final return (Waslic having been dissolved). The return reported a net income amounting to $75,022.95 and a tax liability of $28,294.22, which was assessed and paid. The gains (or losses) realized from the sales of the 52 parcels of real estate involved in this litigation were not reported on the income tax return that was filed for Waslic.

On May 31, 1951, following a revenue agent's examination and report, a statutory notice of a deficiency in the amount of $318,095 for 1946 was issued to the plaintiff as the transferee of Waslic. The tax of $318,095, together with interest in the amount of $94,204.05, was duly assessed. A total of $412,299.05 was paid to the Collector of Internal Revenue by the plaintiff pursuant to the assessment.

The deficiency assessed against the plaintiff as the transferee of Waslic was based on a determination by the Internal Revenue officials that the net sum of $1,277,640.92 was realized from the sales of the 52 parcels of real estate previously mentioned, and that this amount represented a capital gain to Waslic.[2]

---

2. As previously indicated, the correct amount of the aggregate net gain was $1,141,-341.60, rather than $1,277,640.92.

The plaintiff later filed with the Collector of Internal Revenue a claim for the refund of the $412,299.05 which it had paid pursuant to the deficiency assessment of May 31, 1951, together with interest on such amount. The plaintiff's claim was denied by the Commissioner of Internal Revenue, and the present suit was then filed by the plaintiff.

The propriety of the action of the Internal Revenue officials in attributing to Waslic the sales of the 52 parcels of real estate involved in this litigation depends upon whether such sales were actually made by Waslic or by the plaintiff. United States v. Cumberland Public Service Co., 1950, 338 U.S. 451, 455–456, 70 S.Ct. 280, 94 L.Ed. 251. In this connection, the circumstances that the plaintiff signed the deeds of conveyance relative to the 52 parcels of land involved in the litigation, and signed the purchase contracts relative to 45 of the parcels, are relatively unimportant. Each of the transactions must be viewed as a whole, from the commencement of the negotiations to the consummation of the sale, in order to determine whether the facts of the entire transaction indicate that the executed sale was, in substance, the sale of the plaintiff or of Waslic. Commissioner of Internal Revenue v. Court Holding Co., 1945, 324 U.S. 331, 334, 65 S.Ct. 707, 89 L.Ed. 981.

When the sales transactions are viewed in the light of the proper standard, it is readily apparent that the great majority of the real estate sales with which we are concerned in this case were improperly attributed to Waslic by the Internal Revenue officials. Putting aside for subsequent discussion the sales transactions involving the parcels of real estate designated as W–66, W–68, W–69, W–70, W–71, W–72, W–75, WF–13, and WF–46, neither Waslic nor the plaintiff solicited offers from the eventual purchasers of the real estate now under consideration, or conducted any negotiations with the eventual purchasers, prior to the time when the properties were transferred by Waslic to the plaintiff. Such negotiations were conducted by the plaintiff after the properties had been transferred by Waslic to the plaintiff, and, of course, the contracts of sale were entered into after that time. Therefore, as to the properties other than those specifically enumerated earlier in this paragraph, the sales were made, both as to form and substance, by the plaintiff—not by Waslic —and it was error for the Internal Revenue officials to attribute such sales to Waslic for income tax purposes. It necessarily follows that the plaintiff is entitled to recover, at least in so far as the major portion of its claim is concerned.

With respect to the commercial properties designated as W–66, W–68, W–69, W–70, W–71, W–72, and W–75, the negotiations with the eventual purchasers were conducted by Waslic, the purchase offers that led to the disposition of the properties were made to Waslic by the eventual purchasers, and the contracts of sale were signed in the name of Waslic as seller, since these actions were taken while the properties were still owned by Waslic. Despite the fact that the contracts of sale were not entered into by Waslic until after Waslic had transmitted the purchase offers to its sole shareholder, the plaintiff, and the offers had been approved by the plaintiff, it must be concluded, in my opinion, that the sales of the properties discussed in this paragraph were made, both as to form and substance, by Waslic.

In the cases of the farm properties designated as WF–13 and WF–46, the negotiations with the eventual purchasers were conducted by Waslic, and acceptable offers were submitted to Waslic by the eventual purchasers while the properties were owned by Waslic. However, the offers were transmitted by Waslic to its sole shareholder, the plaintiff, for approval, and the offers were not approved until after these properties had been transferred by Waslic to the plaintiff. The purchase contracts were, of course, signed by the plaintiff as seller. Since the purchase offers were negotiated for and obtained by Waslic, it is my opinion that the sales of WF–13 and WF–46

were, in substance, made by Waslic. See St. Louis Union Trust Co. v. Finnegan, 8 Cir., 1952, 197 F.2d 565, 568.

The gains realized from the sales of W–66, W–68, W–69, W–70, W–71, W–72, W–75, WF–13, and WF–46 totaled $219,544.47. Therefore, to the extent that the deficiency assessment of May 31, 1951 was based upon the attribution of this amount to Waslic, it is my opinion that the deficiency assessment was correct. On the other hand, as previously indicated, I believe that the deficiency assessment was erroneous to the extent that it was based upon the attribution of $1,058,096.45 to Waslic.

As a subsidiary point, the defendant contends in its brief for the first time that the profits realized from the realty sales made by Waslic in 1946 constituted ordinary income rather than a capital gain to Waslic. This contention is based upon the assertion that the realty sold by Waslic constituted "property held by the taxpayer primarily for sale to customers in the ordinary course of [its] trade or business", within the meaning of that phrase as used in Section 117(a) (1) (A) of the Internal Revenue Code of 1939 (26 U.S.C., 1952 ed., 117(a) (1) (A)).

■ Since Waslic's realty sales in 1946 were made in the course of a program for the liquidation of its assets in anticipation of dissolution, it is my view that the realty sold by Waslic cannot properly be regarded as "property held by the taxpayer primarily for sale to customers in the ordinary course of [its] trade or business." Garrett v. United States, 1954, 128 Ct.Cl. 100, 105; Victory Housing No. 2 v. Commissioner of Internal Revenue, 10 Cir., 1953, 205 F.2d 371, 372–373; Fahs v. Crawford, 5 Cir., 1947, 161 F.2d 315, 317; Dillon v. Commissioner of Internal Revenue, 8 Cir., 1954, 213 F.2d 218, 220; Chandler v. United States, 7 Cir., 1955, 226 F.2d 403, 406; Curtis Co. v. Commissioner of Internal Revenue, 3 Cir., 1956, 232 F.2d 167, 170.

For the reasons indicated above, it is my opinion that the plaintiff is entitled to recover the major portion of its claim with interest.