**WESTERN HOMES, Inc., a California Corporation, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 32473.**

United States District Court,
N. D. California, S. D.

Feb. 2, 1955.

L. W. Wrixon and Carl R. Schulz, San Francisco, Cal., for plaintiff.

Lloyd H. Burke, U. S. Atty., and George A. Blackstone, Asst. U. S. Atty., San Francisco, Cal., for defendant.

ROCHE, Chief Judge.

Ross Chamberlain and David O. Bohannon were the organizers and sole stockholders of Western Homes, Inc., Pacific Homes, Inc., Greenwood Corporation and Rollingwood Corporation. Each corporation followed a business pattern of renting defense housing to war workers (generally with an option to purchase) and then selling off the houses either to option holders or to others willing to buy.

Plaintiff's position is that the profits which resulted from their sales of defense housing were subject to the capital gains tax of 25% under Section 117(j) of the U. S. Internal Revenue Code, 26 U.S.C.A. Defendant claims that the profits from the sales of defense housing should be taxed at ordinary income and excess profits tax rates in the same manner as if the houses constituted property held by plaintiff primarily for sale to customers in the ordinary course of its trade or business.

This specific issue has been considered by our Ninth Circuit Court of Appeals in two cases, Rollingwood Corporation v. Commissioner of Internal Revenue, 1951, 190 F.2d 263; McGah v. Commissioner of Internal Revenue, 1954, 210 F. 2d 769.

In the Rollingwood case the Tax Court found that the corporation held its houses primarily for sale to customers in the ordinary course of its trade or business within the meaning of Section 117(j); therefore, the profit from these sales was taxable as ordinary income and not as capital gain.

In McGah v. Commissioner of Internal Revenue, 210 F.2d 769, a different situation existed than in the instant case. In that case it clearly appeared that the builder was forced to sell some of his houses in order to liquidate an excessive bank indebtedness. Further, even at the time of trial the taxpayer continued to be engaged in the rental business. The court expressed the view that petitioner constructed the houses primarily for investment purposes, and went on to state that it found no support for the conclusion that the taxpayers had changed their admitted purpose of holding their properties for rental.

Certainly, there may be a change of intent between the time of acquisition of property and the time of sale, i. e., the taxpayer may originally build houses for investment and then by frequent sales in later years demonstrate that renting had been forsaken and that the properties were then being held primarily for sale to customers. This occurred in the instant case, and is evidenced by both the expressed intent and the actual activities of the taxpayer. As early as December 9, 1943, before the corporation had made many sales, the intention to engage in the sale of houses was stated by the chairman of the Board of the corporation and an appropriate resolution was adopted authorizing future sales and ratifying previous sales. The minutes of the special meeting of the Board of Directors of December 9, 1943 are persuasive evidence of the actual intention of the corporation to engage in the business of selling houses. Once this decision to sell was made Western Homes made frequent, continuous sales of the housing. As stated in the Rollingwood case such activity is ample to support a finding that the corporation was in the business of selling real property.

Out of the total of 620 houses built by Western Homes, Inc., 25 were immediately sold and 559 were immediately rented with options in the renters to buy. Such houses necessarily were held by the corporation from the very beginning for sale to the tenants, if the tenants decided to buy. The corporation voluntarily chose this method of doing business and they had no alternative but to sell when the options were exercised. It was therefore in the course of its ordinary business to sell to tenants who exercised their options to buy. The exhibits show that 389 options were exercised by tenants of Western Homes. It can be seen that renting the houses with options in the tenants to purchase was itself an effective sales device. In the period from June 1942 to September 1946 Western

Homes sold every one of the 620 houses it had built.

The most that can be said in plaintiff's favor, considering all of the evidence, is that it intended to pursue whichever activity, renting or selling, proved more profitable, i. e., if the rental market were good they would continue to rent, but if the sales market were high they would sell. Under the Rollingwood decision, such intention is sufficient to make the profit from sales taxable as ordinary income.

It is urged that the procedure followed by plaintiff in disposing of a rental operation certainly did not follow the pattern of advertising and other sales promotion techniques used by real estate firms holding real estate primarily for sale to customers in the ordinary course of their trade or business. However, Mr. Chamberlain readily explained that the reason for this was the fact that the houses sold themselves. Thus, it was not necessary for the corporation to engage in an extensive advertising or selling campaign. When one considers the volume of houses sold, there is no question of the truth of the statement that these houses "sold themselves." According to Mr. Chamberlain, even the decision not to put up "for sale" signs had a sales motive in that a commodity in apparently "scarce" supply is more attractive to a buyer.

Viewing the activities of plaintiff in light of the legislative purpose and policy this court concludes that the houses in question were held by Western Homes primarily for sale to its customers in the ordinary course of its trade or business, and that the gain from the sales thereof should be taxed as ordinary income.

In accord with the above reasoning:

It Is Hereby Ordered that judgment be entered herein upon findings of fact and conclusions of law in favor of the defendant, United States of America, and that the respective parties pay their own costs.