### KING et al. v. COMMISSIONER OF INTERNAL REVENUE.

#### No. 13401.

United States Court of Appeals
Fifth Circuit.

May 22, 1951.

Rehearing Denied June 29, 1951.

Homer L. Bruce, Robert K. Jewett, Houston, Tex., for petitioner.

Carolyn R. Just, Ellis N. Slack, Robert N. Anderson, Carlton Fox, Sp. Assts. to Atty. Gen., Theron Lamar Caudle, Asst. Atty. Gen., Charles Oliphant, Chief Counsel, W. Herman Schwatka, Sp. Atty., Bureau of Internal Revenue, Washington, D. C., for respondent.

Before HUTCHESON, Chief Judge, and BORAH and RUSSELL, Circuit Judges.

RUSSELL, Circuit Judge.

This petition for review of a decision of the Tax Court requires a determination of whether the income from sales of property should be treated as ordinary income or as arising from the sale or disposition of capital assets. The Tax Court determined, adversely to the contentions of the taxpayer, that at the time the sales in question were made the property sold was "held by taxpayer primarily for sale to customers in the ordinary course of his trade or business," and consequently that the profit on the sales must be treated as ordinary income. The taxpayer contends that the decision is clearly erroneous. We do not sustain the contention of the taxpayer for we think the finding of the Tax Court has substantial support in the evidence.

During 1942 and 1943 the J. L. Martin Investment Company constructed 320 houses under a Federal Housing Administration approved plan. It appears from the record, and was so found by the Tax Court, that these houses were originally constructed for the purpose of renting them. In 1942, before construction was begun on the houses, C. E. King acquired 50 per cent of the stock of the Investment Company. In July, 1945 he acquired the remaining 50 per cent of the stock, and in August, 1945, all of the houses then owned by the corporation were conveyed to King, he assuming loans against them, and the corporation was liquidated. C. E. King was president of the corporation, and, as such, had negotiated the financing of the project with Federal Housing Administration for the corporation.

During the time the houses were owned by the corporation a total of 29 were sold, and the remaining 291 were conveyed to King. He sold two of the houses in 1945 and 49 in 1946. The sole question at issue involves the 49 houses which were sold in 1946. Petitioner Juanita M. King is a party to this action because she, as wife of C. E. King, reported one-half of his profits as her share of the community earnings.

It was shown that the petitioner, C. E. King was substantially interested in the ownership and rental of other property and his contention is that the houses in question were held for a similar purpose and not for sale. However there was evidence to the effect that immediately prior to becoming the individual owner of the houses and while owning 100 per cent of the stock of the J. L. Martin Investment Company, King, as president of the corporation which he thus owned, wrote numerous letters urging "people" to buy the houses. In 1945 he was urged by the officials of the Federal Housing Administration to make every attempt to sell the houses and upon instructions from such officials did make earnest and strenuous efforts to so sell them. He testified that the houses had always been available for sale but no sales compaign was attempted until 1945 and in July, 1945, all

the tenants were contacted by personal letters and interviews in an effort to induce them to purchase the houses which they occupied. Evidence shows that within two months after King took the housing project over he tried to work out a sale on one unit and he did sell two houses during 1945 after they were conveyed to him. It is true that there was testimony which in some ways contradicted the effect of these and other similar circumstances. However, even from petitioner's own testimony it could be fairly inferred that the petitioner had run advertisements in the newspapers and after the houses became subject to sale to war veterans made a genuine effort to sell them to such class of purchasers. The record shows there was an advertising expense of $5,297.30 in connection with the sales made in 1946. We do not attempt to state in detail all the evidence in the record which supports the finding of the Tax Court.

■ Determination of the question of whether property is held for sale in the usual course of business is primarily a question of fact.[1] We have recently, in Delsing v. United States, 5 Cir., 186 F.2d 59, had occasion to consider a question similar to that now involved. While we there determined that there was no permissible basis in the evidence to support the ruling of the trial court that the profit should be taxable as ordinary income, we recognized that a person could be engaged in two businesses,—sales and rentals. There the evidence required a finding that the property in question had been held for rental purposes. Here the situation is reversed, and while the taxpayer was engaged in the real estate "rental business", the facts with reference to the houses in question likewise establish his engagement in a sales business as to this segment of his ownership independently of his segregated usual and customary activities in owning and managing properties for rental purposes. We also, in Dunlap v. Oldham Lumber Co., 5 Cir., 178 F.2d 781, 783, had occasion to sum-

marize some of the well recognized tests for determination of the status of property, as to whether "held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business." Ordinarily, this and the related questions are questions of fact. The Tax Court has a primary function of finding the facts in tax disputes, of weighing the evidence, and choosing from among conflicting factual inferences and conclusions those which it considers most reasonable. Commissioner v. Scottish American Co., 323 U.S.[2] 119, 65 S.Ct. 169, 89 L.Ed. 113. It has done so in this case.

The findings of the Tax Court are supported by the evidence and its decision is

Affirmed.

---

1. Harriss v. Commissioner of Internal Revenue, 2 Cir., 143 F.2d 279.

2. Higgins v. Commissioner, 312 U.S. 212, 61 S.Ct. 475, 85 L.Ed. 783; United States v. Pyne, 313 U.S. 127, 61 S.Ct. 893, 85 L.Ed. 1231.