**McGAH et al.**

v.

**COMMISSIONER OF INTERNAL REVENUE.**

**No. 13431.**

United States Court of Appeals
Ninth Circuit.

Feb. 18, 1954.

M. W. Dobrzensky, S. H. Dobrzensky, Edward B. Kelly, Oakland, Cal., for appellants.

Charles S. Lyon, Asst. Atty. Gen., Ellis N. Slack, Walter Akerman, Jr., Sp. Assts. to Atty. Gen., Charles W. Davis, Chief Counsel, Bureau of Internal Revenue, George Lynch, Attorney, Department of Justice, Washington, D. C., for appellee.

Before STEPHENS, BONE and ORR, Circuit Judges.

ORR, Circuit Judge.

This case has been here before, McGah v. Commissioner of Internal Revenue, 9 Cir., 1952, 193 F.2d 662. We vacated the decisions and remanded with instructions to the Tax Court to make further findings and enter such decision as it deemed proper. We held in the previous appeal that in order to establish a taxpayer's purpose of holding property for sale under section 117(j) of the Internal Revenue Code, 26 U.S.C.A. § 117(j) it is necessary for the Tax Court to find the existence of such purpose *prior* to sale and not merely at the time of sale.

■ Pursuant to our remand, the Tax Court, on March 12, 1952, entered its supplemental findings and opinion. No additional evidence was taken. On June 5, 1952, taxpayers filed a petition for review. Respondent asserts that the petition for review was not in time, hence this court is without jurisdiction to entertain this appeal. It is argued that the 30 day limitation contained in section 1140(c) (2) of the Internal Revenue Code, 26 U.S.C.A. § 1140(c) (2) is applicable. We do not agree. That provision is not operative where a rehearing is granted, in which event the three month limitation contained in §§ 1140(d) and 1142 of the Internal Revenue Code, 26 U.S.C.A. §§ 1140(d), 1142, applies. Virginia Lincoln Furniture Corp. v. Commissioner of Internal Revenue, 4 Cir., 1933, 67 F.2d 8; Cherokee Textile Mills v. Commissioner of Internal Revenue, 6 Cir., 1947, 160 F.2d 685.

■■ Our mandate in this case was, in essence, a directive for a rehearing. We directed the Tax Court to make findings on the issue of whether the 14 houses were held for sale for a time prior to sale, and, if so, when and how long they were so held, and to enter such decision as it deemed proper. The Tax Court had the power, if it deemed necessary, to take additional evidence and make such determination thereon as the facts warranted. Levitt and Sons v. Commissioner of Internal Revenue, 2 Cir., 1947, 160 F.2d 209. The fact that the Tax Court felt itself able to comply with the directive on the record then before it does not change the character of the proceeding. The petition for review was timely.

In taking up consideration of the merits, we adopt the statement of facts as set out in our previous opinion:

"Petitioners, Lucille McGah, E. W. McGah, Carole O'Shea and John P. O'Shea, partners calling themselves San Leandro Homes Company, were at all pertinent times engaged in the trade or business of renting and selling houses in San Leandro, California. In August, September and October, 1944, they sold, and derived gains from the sale of, 14 houses, all of which had been used in their trade or business (petitioners used the houses by renting them) and held by them for more than 6 months. For income tax purposes, they treated the gains so derived as gains from sales of capital assets held for more than 6 months, which is to say, as long-term capital gains. Respondent, the Commissioner of Internal Revenue, treated them as ordinary gains and, so treating them, determined that there were deficiencies in respect of petitioners' income taxes for 1944. The Tax Court agreed with respondent. (15 T.C. 69.) Its decisions are here for review." 193 F.2d 662.

The Tax Court, upon remand, made the following additional finding:

"The fourteen houses and lots which the partnership sold during

its fiscal year ended October 31, 1944, which previously had been rented were held primarily for sale to customers in the ordinary course of its business. The dwelling units were so held after the beginning of 1943 and throughout the taxable year."

█ Petitioner urges that there is no substantial evidence to support such a finding. While giving careful consideration to the finding of the Tax Court, we draw our own inferences from undisputed facts. Gillette's Estate v. Commissioner of Internal Revenue, 9 Cir., 1950, 182 F.2d 1010; Pacific Portland Cement Co. v. Food Machinery & Chemical Corp., 9 Cir., 1949, 178 F.2d 541. A consideration of the entire evidence leaves us with the firm conviction that a mistake has been made in this case.

From the inception of the partnership business, the idea of constructing houses for rental purposes stands out as the dominating and controlling motive. Admittedly, San Leandro Homes Company was formed for the purpose of constructing 169 houses for rental to defense workers in San Leandro, California. In setting up their business, petitioners contributed $13,500 capital and borrowed the major share of the necessary capital from the Central Bank of Oakland, California, under 100% Federal Housing Administration loans. They knew that the monthly rental would have to be at least $50 per month to make the rental of the houses profitable. Petitioner applied to the Office of Production Management and received priorities for materials to build 169 rental houses. Officials of the Office of Production Management approved $50 monthly rentals for 100 houses but stated that 69 houses would have to be made available at monthly rentals of $39.99. Petitioners were advised, however, that they might later be granted $50 monthly rentals for all of the houses. No restriction was placed upon the sale of any or all of the houses and petitioners were free to sell or rent as they saw fit.

At the end of 1942 or the beginning of 1943, as the houses were nearing completion, petitioners requested that the 69 houses be given a rental priority of $50 per month. They were informed that no more $50 rental priorities were available. Since the $39.99 units would be unprofitable, petitioners decided to sell the 69 houses together with 5 others, which by location made a group. These 74 houses were thereafter sold during the fiscal year ending October 31, 1943. At no time had these houses been rented, and no resort to advertising was had in effecting the sales. The gain from this transaction was reported as ordinary income and is not here in controversy. We mention it, however, to show the general intent of the partners in their business transactions.

Upon completion, the remaining 95 out of the original 169 houses were held by petitioners and rented on oral month-to-month tenancies to defense workers. Petitioners maintained a rental office to operate and manage the properties. From March 15, 1943, until August 14, 1944, 156 different tenants occupied the 95 houses. No sales were made during the 17 months of continuous rental of the houses, despite the fact that there was an excellent market for houses and sales could be made at large profits.

About the middle of 1944 the Central Bank became concerned about the large debt owed by petitioners and demanded that they liquidate some of their properties in order to reduce their indebtedness. It was under this compulsion that petitioners decided to sell some of the houses then held for rental purposes. Great demand for houses still existed in 1944. Petitioners began to sell the houses as vacancies occurred. During the last three months of the fiscal year ending October 31, 1944, the year in question, 14 houses were sold, 31 houses were sold in 1945, 12 houses were sold and one house purchased and rented in 1946, and three houses sold in 1947. At the time of trial, petitioners continued to hold and rent 35 of the original 95 rental units.

█ We think the reasonable conclusion to be drawn from the facts is that

petitioner constructed the houses primarily for investment purposes and continued to hold them for such purpose during the period in question. See Delsing v. United States, 5 Cir., 1951, 186 F.2d 59; Farry v. Commissioner of Internal Revenue, 1949, 13 T.C. 8. We find no support for the conclusion that prior to the date petitioners were pressed by the bank to sell some of the houses they had changed their admitted purpose of holding the properties for rent to holding them for sale. The decision to sell was not voluntarily made. It was the result of the bank's demand for payment of part of the money owed. The fact that petitioners, as late as the date of trial, were still renting approximately one-third of the 95 houses, despite a ready market and opportunity to realize large profits, is almost conclusive evidence that no change in policy occurred.

We conclude that the 14 houses sold by petitioners during the fiscal year ending October 31, 1944, were held primarily for investment and the gain from the sales thereof was a capital gain.

The decision of the Tax Court is reversed.