**HOME CO., Inc.**

v.

**COMMISSIONER OF INTERNAL REVENUE.**

**No. 4770.**

United States Court of Appeals
Tenth Circuit.
May 12, 1954.

---

Claude L. Rice, Kansas City, Kan. (Dallas Knapp, Coffeyville, Kan., was with him on the brief), for petitioner.

S. Walter Shine (Ellis N. Slack and Dudley J. Godfrey, Jr., Sp. Assts. to Atty. Gen., and H. Brian Holland, Asst. Atty. Gen., were with him on the brief), for respondent.

Before PHILLIPS, Chief Judge, and BRATTON and HUXMAN, United States Circuit Judges.

HUXMAN, Circuit Judge.

This appeal challenges the correctness of a decision of the Tax Court, holding that certain houses sold by appellant taxpayer during 1946 constituted "property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business," within the exclusionary clause of Section 117(a), 26 U.S.C.A. of the Internal Revenue Code.

Under Section 117 of the Internal Revenue Code, a taxpayer is en-

titled to preferential treatment with respect to gain realized from the sale of capital assets save with respect to the sales covered by Subsection (a) of Section 117. The difficulty in this case, as always, comes when we seek to apply clear, well recognized principles of law to a given state of facts. There are innumerable cases which have considered Section 117 in all of its phases but in the main they are not decisive or too helpful in pin pointing the precise question, because in the end the decision in each case depends upon the particular facts of the case. Neither is it possible in the resolution of these questions to adopt fixed indices from which the answer can be reached. There are, however, certain factors which have been recognized as helpful guides in seeking a just and correct result. Among these are the purposes for which the property was acquired, the activities of the taxpayer and his agents with respect thereto such as making improvements on the property, conducting a sales campaign either through advertisements or the employment of real estate agents, the frequency and continuity of sales as differentiated from isolated sales, as well as any other factor reasonably tending to show that the transaction was in furtherance of or in the course of the taxpayer's occupation or business.[1]

■■ Whether property sold or disposed of by a taxpayer was held for sale to customers in the ordinary course of his trade or business within the meaning of Section 117(a) is essentially a question of fact and, since it is the duty of the Tax Court to weigh evidence, draw inferences, make deductions and find the facts, the finding of fact by that court will not be disturbed on review if it is supported by substantial evidence and is not clearly erroneous.[2]

■ With respect to the 61 houses in question which were sold during 1946, the Tax Court found that they were held primarily for sale in the ordinary course of taxpayer's business. The sole question is whether this finding is adequately supported by the record. The taxpayer is a Kansas Corporation, organized in 1939. Its charter states that the purposes for which it was organized were "the purchase, location and laying out of town sites and the sale and conveyance of the same in lots and subdivisions; the purchase, erection and maintenance of buildings including the real estate upon which the same are or may be situated when erected; to invest or loan money with or without security; to conduct a general brokerage agency and commission business for others or as owners in the purchase, sale, rental and management of real estate for others or as owners and the negotiation of loans thereon; to do any and all things necessary for the purpose of carrying out the above." The record does not disclose appellant's real estate activities prior to 1941. The advent of World War II created a serious housing shortage in Coffeyville and in Parsons, Kansas. In 1941 the Federal Housing Administration enlisted the aid of appellant to construct defense housing units in Parsons and Coffeyville under Title VI of the National Housing Act, 12 U.S.C.A. § 1736 et seq., to accommodate Government workers in Government plants established there. Appellant thereafter undertook the construction of two defense housing projects, one at Parsons, consisting of 65 units, and one at Coffeyville, consisting of 83 units. Appellant secured an allotment to build the units from the F. H. A. and made arrangements with a private lender, the First Federal Savings and Loan Association of Coffeyville, to lend it the necessary

1. Mauldin v. Commissioner of Internal Revenue, 10 Cir., 195 F.2d 714; Friend v. Commissioner of Internal Revenue, 10 Cir., 198 F.2d 285; Victory Housing No. 2 v. Commissioner of Internal Revenue, 10 Cir., 205 F.2d 371.

2. Helvering v. National Grocery Co., 304 U.S. 282, 58 S.Ct. 932, 82 L.Ed. 1346; Commissioner of Internal Revenue v. Scottish American Investment Company, 323 U.S. 119, 65 S.Ct. 169, 89 L.Ed. 113; Friend v. Commissioner of Internal Revenue, 10 Cir., 198 F.2d 285.

money up to 90 per cent of the appraised value of the proposed projects. The plans and specifications for the proposed projects were submitted to and approved by the F. H. A.

The Parsons project was built by appellant. A contracting firm was engaged to build the Coffeyville project. The units in both projects were constructed by the petitioner for rental purposes. The units at Parsons were not restricted as to sale but none were sold by appellant prior to 1946. The units at Coffeyville were constructed subject to certain Government restrictions, the pertinent portion of which required appellant as found by the court to "make every reasonable effort to grant preference as to occupancy to persons engaged in war activities"; to "not sell any structure or rent any portion thereof for at least 60 days after its completion except for occupancy by a person engaged in war activity in the area." There were also restrictions with relation to the conditions under which the units could be sold.

With few exceptions, construction was completed on the Parsons project by the end of 1942 and on the Coffeyville project by the end of 1943. The housing units in both projects, with the exception of one four-unit building and two duplexes in the Coffeyville project, were single family dwellings. The Tax Court found that the housing units in both projects were constructed by appellant for rental purposes. Appellant's rental operations were unprofitable and it incurred annual losses in the operation of the projects from 1943 to 1946. By the end of 1945 appellant was in an unfavorable financial condition. There were at that time numerous vacancies in both projects due to the closing of the war activities carried on by the Government at these two places. By the end of 1945 a majority of the units in the Coffeyville project were vacant. On October 15, 1945, all restrictions on the sale or rental of defense housing were removed by the National Housing Agency and War Production Board. In the lat-

ter part of 1945, petitioner's officers and directors decided that the units in both the Parsons and Coffeyville projects would have to be sold. The houses were thereafter put on the market for sale and an active sales campaign was commenced by the petitioner. During 1946 appellant conducted an active sales promotion campaign in an effort to sell the housing units in the Parsons and Coffeyville projects. Advertisements were placed in newspapers, tenants were contacted orally and by letter, and the housing units were listed with real estate firms. In 1946 appellant sold 37 units in the Coffeyville project and 24 in the Parsons project. Of these units, 31 were sold to tenants, 22 were sold to non-tenants, and 8 units were vacant when sold. Service men purchased 51 of the 61 units. The 37 units in the Coffeyville project were sold from January through July, 1946. In the Parsons project 1 unit was sold in January, 1946, 22 units were sold from March through September, 1946, and 1 unit was sold in December, 1946.

During the taxable year in question, appellant carried on other real estate activities but the Tax Court found that these were not substantial. The Tax Court found that during 1946 appellant would have sold any or all of the units in the Parsons and Coffeyville projects. It is upon these facts that the Tax Court based its finding challenged in this appeal.

Appellant concedes that the property was for sale during 1946 but contends that it was not held primarily for sale or for sale in the ordinary course of appellant's business. We think it is clear from the record that beginning with 1946 all this property was held primarily for sale. The Government plants which induced the construction of these units were closed. The workers who largely were the tenants had moved away and many of the units stood vacant and unoccupied. This resulted in financial embarrassment to appellant, verging on insolvency, and resulted in its decision to sell and dispose of the property. The only question is whether the units were sold in the ordi-

nary course of taxpayer's business, as that term is used.

The indices to which we generally look to determine whether the sale of property is in the ordinary course of real estate business have been pointed out. We think they are all present here. We think appellant's activities are indistinguishable from those usually employed by one engaging in the business of selling real estate. It carried on an active sales campaign, did extensive advertising, employed real estate agents, paid commissions, made sales through its own agents, actively solicited purchasers for the property, in fact, did everything one ordinarily does in carrying on such a business.

 One may, of course, liquidate a capital asset. To do so it is necessary to sell. The sale may be conducted in the most advantageous manner to the seller and he will not lose the benefits of the capital gain provision of the statute, unless he enters the real estate business and carries on the sale in the manner in which such a business is ordinarily conducted. In that event, the liquidation constitutes a business and a sale in the ordinary course of such a business and the preferred tax status is lost.[3]

We think the facts distinguish this case from the decision by our court in Victory Housing No. 2, Inc., v. Commissioner, 10 Cir., 205 F.2d 371. There there was no determination to sell and liquidate the rental properties and the rental of the properties by the Corporation continued and it continued to be its business. The managing officers did adopt a policy of selling some of the units to returning veterans and in a few instances to non-veterans, where they desired to purchase. This was done largely as an accommodation to such persons and not as a part of a sales policy or sales campaign by the taxpayer. No real estate agents were employed. No sales campaign by advertising or other means was carried on. The taxpayer there did none of the things ordinarily associated with the real estate business. The sale of some rental units was incidental to its rental business in which it continued and, as was pointed out, was largely for the accommodation of those who sought a place to live.

What has been said disposes of the issues in the case and it is not necessary to discuss appellant's effort to draw an analogy between the term "primarily for sale to customers in the ordinary course of his trade or business" in Section 117 (j) (1) and the phrase "attributable to the operation of a trade or business regularly carried on by the taxpayer" in Section 122(d) (5).

The decision of the Tax Court is affirmed.

---

3. White v. Commissioner of Internal Revenue, 5 Cir., 172 F.2d 629.