CURTIS COMPANY (Formerly Curtis Engineering Company), Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

Nos. 11764 and 11765.

United States Court of Appeals Third Circuit.

Argued Feb. 7, 1956.

Decided March 30, 1956.

Robert Ash, Washington, D. C. (Carl F. Bauersfeld, Washington, D. C., Fred L. Rosenbloom, Thomas P. Glassmoyer, Philadelphia, Pa., on the brief), for petitioner.

Herbert Brownell, Jr., Atty. Gen., Charles B. Freeman, Washington, D. C. (H. Brian Holland, Asst. Atty. Gen., Lee A. Jackson, Harry Baum, Dept. of Justice, Washington, D. C., on the brief), for respondent.

Before GOODRICH, McLAUGHLIN and KALODNER, Circuit Judges.

GOODRICH, Circuit Judge.

These appeals present the question whether the taxpayer is entitled to the benefit of capital gains provisions of the income tax statute in the business transactions described herein. The Tax Court has held that the taxpayer is liable for ordinary income tax [1] and the two appeals represent the taxpayer's litigation contesting the conclusion reached for different years of its business.

The sole question is one which comes under section 117 of the Internal Revenue Code of 1939, specifically (a) (1) and (j) (1) of that section. 26 U.S.C.A. § 117(a) (1), (j) (1). What was decided by the Tax Court and what we must review here is whether specified property owned by the taxpayer was held "primarily for sale to customers in the ordinary course of his trade or business." This sounds like a fact conclusion.[2] But it is subject to reversal if the conclusion is clearly erroneous [3] or if the findings of fact are induced by an erroneous view of the law.[4] The point was recently stated by this Court as follows: "In disturbing a district court's findings of basic facts, this court is guided by the 'clearly erroneous' provision of Rule 52 (a). But Rule 52(a) is not applicable where, as here, the dispute is not as to the basic facts, but as to what inference (i. e., ultimate fact) should reasonably be derived from the basic facts. * * *" Sears, Roebuck & Co. v. Johnson, 3 Cir., 1955, 219 F.2d 590, 591. Again, to the same effect: "The District Court found as a fact that expatriation had taken place. With respect to that finding it must immediately be noted that it was in the nature of an ultimate finding of fact and on that score it is well settled that such a finding is but a legal inference from other facts and as such is subject to review free of the restraining impact of the so-called 'clearly erroneous' rule applicable to ordinary findings of fact by the trial court. * * *" Lehmann v. Acheson, 3 Cir., 1953, 206 F.2d 592, 594; see also, Goldberg v. Commissioner, 5 Cir., 1955, 223 F.2d 709, 711.

There are two chapters to the taxpayer's story. One has to do with the sale of houses; the other has to do with the sale of unimproved land.

## I. Sale of Houses.

The house question will be considered first. The taxpayer during the years 1942 through 1944 built 1,098 units of housing for rental purposes. 858 units of these were single family homes; 240 were duplex apartments. Petitioner, prior to this, had bought land, divided it, built houses thereon and sold them. This was an established division of its business and through the years ordinary income tax was paid on the profits resulting. Likewise, ordinary income tax was paid on profits derived from the rental of the houses just described.

In 1946 the restrictions on the prices at which these houses could be sold were removed.[5] Restrictions were still retained upon the price at which the property could be rented, however. The taxpayer decided to sell the houses and put its capital into the development of shopping centers, for rental purposes. It doubted whether the market value of the houses would continue to appreciate. The taxpayer thereupon made efforts to sell the houses. 851 units were sold in its tax year ending in 1947; 2 in 1948; 76 in 1949 and 45 in 1950. A gross profit of $2,829,742.81 was realized in 1947; $8,-

1. Curtis Co., 1955, 23 T.C. 740.

2. Cohn v. Commissioner, 9 Cir., 1955, 226 F.2d 22, 24; King v. Commissioner, 5 Cir., 1951, 189 F.2d 122, 124, certiorari denied 342 U.S. 829, 72 S.Ct. 54, 96 L. Ed. 627; Harriss v. Commissioner, 2 Cir., 1944, 143 F.2d 279, 281.

3. 26 U.S.C.A. § 1141(a); Fed.Rules Civ. Proc. rule 52(a), 28 U.S.C.A.

4. 5 Moore, Federal Practice ¶ 52.03[2] at p. 2631 (2nd ed.1951); Goldberg v. Commissioner, 5 Cir., 1955, 223 F.2d 709, 711.

5. National Housing Agency Regulation 60–17, 10 Fed.Reg. 12762 (1945). These restrictions were imposed when priorities for building materials were obtained.

560.08 in 1948; $638,043.98 in 1949 and $377,626.31 in 1950.

The method adopted by the taxpayer was as follows: Sales were made by taxpayer's own staff. This saved the taxpayer money; its commissions were much less than if it had employed real estate brokers at the established 5 per cent commission price. Some advertising was used, more in the case of the single residences than in the case of the duplex apartments. The sales were for cash. No inspection of the properties was permitted. They were all sold in the condition in which they then were; no effort was made to improve their appearance or to make them more saleable. No additional properties of similar nature were bought by the taxpayer nor were any properties not owned by it sold in this fashion. When the rental properties were all sold the rental part of the taxpayer's business was wound up. Upon these facts, is a conclusion justified to the effect that these rental properties which were to be sold were held by the taxpayer primarily for sale to customers in the ordinary course of its trade or business?

We find helpful language used by Judge Tuttle for the court in Goldberg v. Commissioner, 5 Cir., 1955, 223 F.2d 709, 712. The court says:

"(2) In the typical case it is clear that the property owner did not intend to engage in the business of buying and selling real estate when he acquired or developed it, but on the contrary intended only to rent it. At the time he may have been restrained from selling by wartime legislation or the terms of a government loan. But years later, his intention changes or the government restrictions are removed, and he proceeds to sell the property. The test as to whether the capital gain provisions apply in such event is, at bottom, whether the purpose of the sales is primarily making money by carrying on a substantial part of the activities of a person engaged in the business of selling houses, or to dispose of or liquidate the rental business. If the latter is the case, the owner obtains capital gain benefits."

There is no doubt in this particular case that prior to the decision to sell these houses the properties were being held for investment purposes. The Tax Court so states and explicitly says that "up until the decisions to sell its rental houses and apartments, petitioner had [not] done anything which would disqualify these rental units for capital gains treatment under section 117(j) upon their sale."

The court, however, did conclude that because of the manner in which the sales were made they were conducted in the ordinary course of business of selling real property. It was expressly pointed out, however, that the court did not rely merely on the large number of sales involved but upon the various actions by the taxpayer.

It was conceded by counsel for the Commissioner at the argument that if the taxpayer had sold all these properties to one buyer at one time there would be no basis for holding that they were sold in the ordinary course of the taxpayer's business.[6] It was also conceded that had taxpayer employed a firm of brokers to sell the properties for it the sales then would not be in the ordinary course of the taxpayer's business.[7]

Is the taxpayer any worse off because it did the selling itself and by single parcels instead of job lots? We do not see how it can be fairly said so. With the concession that up to the very minute of decision to get out of the housing rental business the property was held for investment and with the undisputed fact that after the rental properties were sold the taxpayer turned its attention to other activities, we do not see that there is basis for saying that the regular course

---

6. See, e.g., Chandler v. United States, 7 Cir., 1955, 226 F.2d 403, 406; Goldberg v. Commissioner, 5 Cir., 1955, 223 F.2d 709, 712.

7. See, e.g., Dillon v. Commissioner, 8 Cir., 1954, 213 F.2d 218; Smith v. Dunn, 5 Cir., 1955, 224 F.2d 353.

**170**

of its business, as to these houses, was real estate selling. We think it a case of one having an investment property on hand which he wants to turn into another form of investment.[8] By the very nature of the case he had to sell the properties a piece at a time. Surely that does not make him a "dealer" in these parcels of land any more than it would make a man a dealer if he wanted to liquidate his holdings in a corporate stock for which the market was weak so that he had to sell by small parcels instead of by one sale. That is the taxpayer's situation here.

■ There is no dispute as to the evidentiary facts. The only question is whether on these facts the conclusion is supportable that petitioner went ad hoc into the ordinary course of business when it sold these rental properties. We think not.

A legislative attempt to draw a distinction between the tax on capital gain and ordinary income must necessarily produce a puzzling line of decisions for the facts are as variable as human activities. Variations of the fact situation of this case are found in a number of decisions. They indicate some disagreement not unnaturally. We think on the whole the conclusion we reach in this case is in the pattern which the majority of the Courts of Appeals have followed.[9]

## II. Sales of the Unimproved Land.

Petitioner bought from time to time undeveloped land. With regard to one block of it, he has had the advantage of the capital gains provisions upon its sale. This was a piece of land which was bought for the development of a shopping center but the plan failed because of zoning restrictions which could not be met. The major portion of the land was sold off in two pieces at a profit. The taxpayer had the advantage of the capital gains provisions.

With regard to the other pieces the Commissioner insists that the taxpayer is not entitled to the benefit of the capital gains provisions. There were seventeen pieces held by the taxpayer during the taxable years. The taxpayer made a total of eighteen sales of undeveloped land during this period. Six of them the taxpayer conceded resulted in ordinary income.

Here, too, the evidentiary facts are not in dispute. The question is whether the taxpayer was holding this undeveloped land for sale in the ordinary course of its trade or business. The Tax Court believed the "essential fact seems to be that these properties were acquired for the purpose of re-sale whenever a satisfactory profit could be made. * * *" and "primarily for sale to its customers in the ordinary course of its business * * *"

8. It is precisely this sort of thing which prompted the passage of the capital gains provisions. Capital gains were taxed at lower rates to relieve the taxpayer from "excessive tax burdens on gains resulting from a conversion of capital investments, and to remove the deterrent effect of those burdens on such conversions." Burnet v. Harmel, 1932, 287 U.S. 103, 106, 53 S.Ct. 74, 75, 77 L.Ed. 199.

9. See Chandler v. United States, 7 Cir., 1955, 226 F.2d 403; Dillon v. Commissioner, 8 Cir., 1954, 213 F.2d 218; Greenspon v. Commissioner, 8 Cir., 1956, 229 F.2d 947; compare McGah v. Commissioner, 9 Cir., 1954, 210 F.2d 769, with Rollingwood Corp. v. Commissioner, 9 Cir., 1951, 190 F.2d 263. Perhaps the Tenth Circuit would disagree with our conclu-

sion, see Home Co. v. Commissioner, 1954, 212 F.2d 637. In the Fifth Circuit, compare Goldberg v. Commissioner, 1955, 223 F.2d 709, with King v. Commissioner, 1951, 189 F.2d 122, certiorari denied Oct. 8, 1951, 342 U.S. 829, 72 S.Ct. 54, 96 L.Ed. 627, and Galena Oaks Corp. v. Scofield, 1954, 218 F.2d 217. For the Sixth Circuit, see Dougherty v. Commissioner, 1954, 216 F.2d 110. Saltzman v. Commissioner, 3 Cir., 1955, 227 F.2d 49, is clearly distinguishable. There the evidence indicated that the houses were never held for investment purposes. 14 TCM 1955–18, CCH Dec. 20,836(M). See, generally, Reifer, Sale of Rental Housing Units: Ordinary Income or Capital Gain?, 97 Journal of Accountancy 449 (April 1954).

We do not profess to know precisely what makes one a dealer in undeveloped land. There were, as those things go, quite a number of parcels and the sales were comparatively rapid. There was no such showing of a change in purpose of the taxpayer's activities to induce the sale as we had in the case of the rental properties. We cannot say under these circumstances that the Tax Court was wrong in reaching the conclusion it did.[10]

The judgment of the Tax Court will be reversed and the case remanded for further proceedings consistent with this opinion.

McLAUGHLIN, Circuit Judge (dissenting).

Section 117(j) of the Internal Revenue Code of 1939, as amended, 26 U.S.C. 117 (j), accords capital gain treatment to "property used in the trade or business" unless the property is inventory or "held * * * for sale to customers". The Supreme Court recently in construing this section stated "Since this section is an exception from the normal tax * * * [it] must be narrowly applied and its exclusions interpreted broadly." [1] Our Saltzman v. Commissioner, 3 Cir., 1955, 227 F.2d 49 is very much in point and does, I think, govern here. By any and all of the established criteria, i. e. purpose of acquisition, improvements made on the land, number of sales, advertising and selling efforts, the "busyness" test,[2] reinvestment of proceeds, related activities, this income was ordinary profit of the taxpayer's building and real estate business.

Such conclusion has the solid support of the pertinent decisional law. Cohn v. Commissioner, 9 Cir., 1955, 226 F.2d 22; Rollingwood Corp. v. Commissioner, 9 Cir., 1951, 190 F.2d 263; Home Co. v. Commissioner, 10 Cir., 1954, 212 F.2d 637; King v. Commissioner, 5 Cir., 1951, 189 F.2d 122, certiorari denied 342 U.S. 829, 72 S.Ct. 54, 96 L.Ed. 627;[3] Galena Oaks Corp. v. Scofield, 5 Cir., 1954, 218 F. 2d 217; Winnick v. Commissioner, 6 Cir., 1952, 199 F.2d 374; Id., 21 T.C. 1029, affirmed, 6 Cir., 1955, 223 F.2d 266; Dougherty v. Commissioner, 6 Cir., 1954, 216 F.2d 110; involve substantially similar fact problems and clearly uphold the Tax Court. In Goldberg v. Commissioner, 5 Cir., 1955, 223 F.2d 709, 713, "[t]here was absolutely no evidence of any promotional activity * * *"; there was no advertising; no salesmen; no commissions paid; though price ceilings had been removed, the houses were sold to tenants at the F.H.A. prices; neither the taxpayer nor any of the transferees there had ever before or since been in the business of building and holding houses for sale. In Dillon v. Commissioner, 8 Cir., 1954, 213 F.2d 218, the taxpayer was not in the real estate business and all the sales promotional activity was carried on by an outside real estate company. The same is true of Smith v. Dunn, 1955, 224 F.2d 353, Fifth Circuit (one judge dissenting in part). McGah v. Commissioner, 9 Cir., 1954, 210 F.2d 769 involved a forced partial liquidation, at the behest of a creditor bank. Chandler v. United States, 7 Cir., 1955, 226 F.2d 403 involved a unique fact situation [4] and the court gave great weight to the fact that there was no reinvestment of the proceeds in real estate as we have in the present situation. Greenspon v. Commissioner, 8

---

10. See Saltzman v. Commissioner, 14 TCM 1955–18, CCH Dec. 20,836(M), affirmed per curiam, 3 Cir., 1955, 227 F.2d 49; Mauldin v. Commissioner, 10 Cir., 1952, 195 F.2d 714.

1. Corn Products Refining Co. v. Commissioner, 1955, 350 U.S. 46, 52, 76 S.Ct. 20, 24.

2. Snell v. Commissioner, 5 Cir., 1938, 97 F. 2d 891.

3. For later year on same facts see Jackson v. King, 5 Cir., 1955, 223 F.2d 714, reversing jury verdict for taxpayer.

4. There a Chicago liquidating trust of some three million acres of Texas land after forty years was still liquidating. It was not the conventional builder and realtor, as is the instant taxpayer.

Cir., 1956, 229 F.2d 947, involved sales by liquidating trustees of a pipe business. It is at most only obliquely related to the facts before us; further, there was no extensive advertising or sales promotion.

The circumstance that these properties were not readily salable as investment real estate, reflects back on the purpose for which taxpayer built them. An apartment house is typical investment housing. It is salable as such and capital gain results. But suppose it is divided into 1,000 cooperative apartments, should not the "sale to customers" exclusion deny the favored treatment?

The analogy to a trader in securities is inapposite. Trading in securities for one's own account, no matter how extensive, is not a business for tax purposes. Real estate operations, however, are taxable as a business. Higgins v. Commissioner, 1941, 312 U.S. 212, 61 S.Ct. 475, 85 L.Ed. 783. This taxpayer's regular business is buying land, subdividing, building, and selling real estate to consumers or investors. If analogy to the securities field is to be used it is the "underwriter" or "dealer" operation which is comparable to the taxpayer. The "dealer" or "underwriter" may have an investment account and thereby obtain capital gains, but he must conform closely to Section 117(n) and the regulations thereunder. Even after designation within thirty days of acquisition as an investment, if the security is thereafter ever held for sale to the firm's customers the favored treatment under Section 117 is lost. A "dealer" cannot buy or underwrite a large block of securities, and, after holding more than six months, sell them piecemeal to his customers and still qualify under Section 117.

In Section 1237 of the Internal Revenue Code of 1954, Congress sharply outlined the sale of realty area. Taxpayer's facts patently would not qualify for favored treatment under that section. And " * * * 'subsequent legislation may be considered to assist in the interpretation of prior legislation upon the same subject.' * * * " Great North-

ern Railway Co. v. United States, 1942, 315 U.S. 262, 277, 62 S.Ct. 529, 535, 86 L.Ed. 836.

The basis of the majority thesis is that property once "used in a trade or business" retains that character regardless of whether it is subsequently inventoried or held for sale to customers. Section 117 has not been and cannot be so construed but is the sound source of the well established principle that manner and purpose of holding property may change or be twofold. Richards v. Commissioner, 9 Cir., 1936, 81 F.2d 369, 106 A.L.R. 249; and Cohn v. Commissioner, supra; Rollingwood Corp. v. Commissioner, supra; Home Co. v. Commissioner, supra; King v. Commissioner, supra; Galena Oaks Corp. v. Scofield, supra; Winnick v. Commissioner, supra; Dougherty v. Commissioner, supra.

In selling the houses taxpayer was engaged in business. It should be so taxed. I would therefore affirm the Tax Court on this point also.